UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TONY MILLER,

       Petitioner,                                  Hon. Robert Holmes Bell

v.                                                    Case No. 1:06-CV-525

CINDI CURTIN,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Miller's petition for writ of habeas corpus. On July 13, 2009, the undersigned issued a Report and Recommendation that Miller's petition be denied. (Dkt. #43). On March 3, 2010, the Honorable Robert Holmes Bell adopted the Report and Recommendation "with respect to all of Petitioner's claims *other than* his claim of ineffective assistance of counsel for failure to present an alibi witness." Accordingly, the matter was referred to the undersigned "to determine whether an evidentiary hearing is warranted, to hold one if it is warranted, and to review the petition in light of the evidence from that proceeding."

As discussed below, the undersigned concludes that Petitioner is not entitled to an evidentiary hearing and, furthermore, that his ineffective assistance of counsel claim is without merit. Therefore, in accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Miller's petition for writ of habeas corpus be **denied**.

1

# BACKGROUND

As a result of events which occurred on January 27, 2004, Petitioner was charged with first degree murder, assault with intent to murder, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Randall Reed**

On the afternoon of January 27, 2004, Reed and Andrew Bell were traveling in Reed's vehicle. (Trial Transcript, May 18, 2004, 32-33). Reed was driving and Bell was sitting in the passenger seat. (Tr. 33). As Reed was driving he noticed a green Taurus "driving real fast and erratically" behind him. (Tr. 34-35). Shortly thereafter, Reed stopped at a stop sign at which point the green Taurus "pulled up" on the driver's side of Reed's vehicle. (Tr. 34-35).

Reed observed that Petitioner was driving the Taurus. (Tr. 34-35, 46-49). Petitioner motioned to Reed to roll down his window. (Tr. 36). When Reed rolled down his window, Petitioner said "that somebody shot up his people's house." (Tr. 36, 49). Before Reed could respond that he did not know what Petitioner was talking about, Petitioner aimed a hand gun at Reed's vehicle and began firing. (Tr. 36-37). Petitioner fired 7-9 times at Reed's vehicle. (Tr. 38-39). Reed was struck in the left elbow and right hand. (Tr. 37-40). Reed looked at Bell, who "wasn't moving or saying anything." (Tr. 39). Reed immediately drove to a local police station, from which he and Bell were taken to a local hospital. (Tr. 40-45).

**Michael Fountain**

As of January 27, 2004, Fountain was employed as police officer with the City of Detroit. (Trial Transcript, May 18, 2004, 86-87). At approximately 2:45 p.m. that afternoon, Officer Fountain was standing outside his precinct building when Randall Reed approached in his vehicle. (Tr. 87-88). Reed was yelling hysterically that he and his friend had been shot at the intersection of Schoolcraft and Ewald Circle. (Tr. 88, 91). Fountain observed several bullet holes on the driver's side of Reed's vehicle. (Tr. 87-88). Reed told Fountain that "he knew the guy" who shot him, but "couldn't really remember his name." (Tr. 90).

**Jason Ambabo**

As of January 27, 2004, Ambabo was employed as a City of Detroit police officer. (Trial Transcript, May 18, 2004, 97). At approximately 2:40 p.m. that afternoon, Ambabo encountered Randall Reed in the police station parking lot. (Tr. 98). While helping Reed exit his vehicle, Ambabo observed another man in Reed's vehicle with a gunshot wound to the head. (Tr. 98-99). Ambabo then escorted Reed into the police station. (Tr. 99-100). Reed told Ambabo that he had been shot by "two guys in a green Taurus." (Tr. 100-01).

**Roger McGee**

As of January 27, 2004, McGee was employed as a police officer for the City of Detroit. (Trial Transcript, May 18, 2004, 109). On that afternoon, McGee and his canine partner were dispatched to investigate a green Taurus located near the intersection of Tyler and Hubbell. (Tr. 109-11). McGee discovered that the Taurus was locked and located in a "highly contaminated"

location. (Tr. 111). As a result, McGee's canine partner was unable to obtain a scent "to track from the vehicle." (Tr. 111).

Shortly thereafter, McGee was dispatched to 12754 Marlowe where Petitioner was being detained by other officers. (Tr. 111-12). Using Petitioner as a starting point, McGee and his canine partner began tracking Petitioner's scent. (Tr. 112-13). McGee's canine partner tracked Petitioner's scent from the backyard of the residence at 12754 Marlowe to Petitioner's residence at 12875 Hubbell. (Tr. 113, 124, 133-34). The green Taurus to which McGee had been initially dispatched to investigate was located directed across the street from this location. (Tr. 113). McGee also observed a set of footprints that extended from 12754 Marlowe to the side door of Petitioner's residence. (Tr. 114, 133-34).

**Steve Murdock**

As of January 27, 2004, Murdock was employed as a City of Detroit police officer. (Trial Transcript, May 18, 2004, 118). That afternoon, Murdock and his partner, Officer Adam Pembrook, were dispatched to investigate a shooting that occurred at the intersection of Schoolcraft and Ewald Circle. (Tr. 118-19). Murdock and Pembrook were instructed to search for a green Taurus that had been driven by a black male. (Tr. 118-19).

As he was driving in the vicinity of Marlowe and Hubbell, the officers passed a black male who was walking down the street. (Tr. 119-20). Murdock and Pembrook were immediately "flagged down" by a Mr. Floyd who was standing in the driveway of the residence at 12754 Marlowe. (Tr. 120-21). Based on information provided by Mr. Floyd, the officers turned around and "investigated [the] individual [they] had originally passed." (Tr. 122-23). After detaining this

4

man, Murdock called for assistance from another unit. (Tr. 123). As soon as the second unit arrived, Murdock and Pembrook returned to speak with Mr. Floyd. (Tr. 123). After speaking further with Mr. Floyd, Murdock requested that a canine unit be dispatched to his location. (Tr. 123-24).

**Adam Pembrook**

As of January 27, 2004, Pembrook was employed as a police officer for the City of Detroit. (Trial Transcript, May 18, 2004, 129-30). That afternoon, Pembrook and Officer Murdock were dispatched to the vicinity of Marlowe and Hubbell to investigate a nearby shooting. (Tr. 129-31). As they traveled on Marlowe, Pembrook observed Petitioner walking down the street. (Tr. 130-32). A "few houses down," Pembrook and Murdock were "flagged down" by a man. (Tr. 132). After speaking with this man, Pembrook and Murdock turned around and located Petitioner. (Tr. 132-33). The officers arrested Petitioner and turned him over to another unit that had arrived at the scene. (Tr. 133). Murdock and Pembrook then returned to speak with the man that had flagged them down. (Tr. 133).

**Rick Fields**

As of January 27, 2004, Fields was employed as a City of Detroit police officer, assigned to the evidence technician unit. (Trial Transcript, May 18, 2004, 142). On the afternoon of January 27, 2004, Officer Fields performed a gunshot residue test on Petitioner's right and left hands. (Tr. 146-48).

**William Niarhos**

As of January 27, 2004, Niarhos was employed as a police officer for the City of Detroit. (Trial Transcript, May 18, 2004, 172). At approximately 8:25 p.m. that evening, Officer Niarhos executed a search warrant at Petitioner's residence. (Tr. 133-34, 172-73). Pursuant to this search, Niarhos seized more than 100 pieces of live ammunition from "the hallway floor" and the "top of the couch." (Tr. 173-75). Niarhos also recovered two large bags which contained a substance that appeared to be marijuana. (Tr. 173-75).

**William Steiner**

As of April 14, 2004, Steiner was employed as a forensic chemist for the Detroit Police Crime Lab. (Trial Transcript, May 19, 2004, 5-9). Steiner processed and analyzed the results of the gunshot residue test that Officer Fields performed on Petitioner. (Trial Transcript, May 18, 2004, 146-48; Trial Transcript, May 19, 2004, 8-9). Steiner's analysis revealed the presence of "gunshot residue" on Petitioner's left hand. (Tr. 8-18).

**Dr. Boguslaw Pietak**

As of January 30, 2004, Dr. Pietak was employed as an assistant medical examiner for the Wayne County Medical Examiner's Office. (Trial Transcript, May 19, 2004, 36-38). On this date, Dr. Pietak performed an autopsy on Andrew Bell. (Tr. 38). The doctor determined that Bell died as a result of a single gunshot wound to the head. (Tr. 38-40). Dr. Pietak characterized Bell's killing as a "homicide." (Tr. 40).

## ANALYSIS

**I.      Standard of Review**

As noted above, the undersigned has been directed to, in part, determine whether Petitioner is entitled to an evidentiary hearing. As the Supreme Court has indicated, however, resolution of this particular question must take into consideration the standard of review applicable to the underlying habeas claim in question. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate").

In its March 3, 2010 Opinion and Order, the district court concluded that "[t]hough the Court agrees with the R & R that the state court's determination was not in error under the deferential AEDPA standard of review, the Sixth Circuit's decision in *Brown v. Smith* indicates that the Court should apply the pre-AEDPA standard of review where the petitioner properly presents new evidence in support [of] his claim." (Dkt. #48). Because the standard of review applicable to Petitioner's remaining habeas claim is relevant to the question of whether Petitioner is entitled to an evidentiary hearing, the undersigned finds it necessary to address the matter.

In *Brown v. Smith*, 552 F.3d 424 (6th Cir. 2008), Michael Brown was convicted of sexually assaulting his fourteen-year-old daughter. *Id.* at 426. On appeal, Brown asserted that his daughter had met regularly with a counselor in the months prior to and immediately after the alleged assault. *Id.* at 427. Brown argued that by failing to investigate these counseling sessions and question the counselor at trial, his trial attorney rendered ineffective assistance. This claim was rejected by the state courts.

Brown subsequently moved in federal district court for a writ of habeas corpus, asserting, in part, that he was denied the right to the effective assistance of counsel. In support of this claim, Brown submitted records regarding the treatment sessions between his daughter and her counselor. *Id.* Significantly, these treatment records were not presented to, nor considered by, the state courts. *Id.* at 427-29 (observing that "the counseling notes that form the basis of the claim were not in the record" before the state court). Brown argued that because his ineffective assistance of counsel claim relied on evidence that was never presented to the state court (through no fault of his own), the deferential standard of review articulated by AEDPA did not apply. *Id.* at 428-29. The Sixth Circuit agreed, concluding as follows:

> AEDPA requires that a state court's adjudication with respect to a habeas claim cannot be overturned unless it is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. This deferential standard of review, however, applies only to a claim that has been "adjudicated on the merits in State court proceedings." Brown argues, and we agree, that his ineffective-assistance-of-counsel claim has not been "adjudicated on the merits" because the counseling notes that form the basis of the claim were not in the record before the Michigan Court of Appeals, and that court explicitly acknowledged that its review was "limited to mistakes apparent on the record."
>
> This circuit has held that, in the context of a *Brady* claim, when the petitioner's habeas claim involves *Brady* material that was uncovered only during the federal habeas proceedings, AEDPA deference does not apply to an earlier, state-court *Brady* adjudication involving a different mix of allegedly improperly withheld evidence. We think that the same principle applies generally whenever new, substantial evidence supporting a habeas claim *comes to light during the proceedings in federal district court*.

*Id.* (internal citations omitted) (emphasis added).

In concluding that Petitioner's remaining ineffective assistance of counsel claim should be evaluated pursuant to the more favorable pre-AEDPA standard of review, the district

court, citing *Brown*, observed that "the Sixth Circuit held that the deferential AEDPA standard of review does not apply where the petitioner presents evidence that was not available to the state court and where the petitioner has met the standard for expanding the record." (Dkt. #48 at 4-5).

It is not clear precisely what evidence the district court identified as first "com[ing] to light during the proceedings in federal district court," thus invoking the rule articulated by the *Brown* court. To the extent that the district court was referring to the affidavit executed by Tamichia Latham and submitted by Miller in support of his petition for writ of habeas corpus, the Court notes that this affidavit was submitted by Petitioner to the Michigan Court of Appeals on direct appeal. (Dkt. #23). To the extent that the district court was referring to any evidence which Petitioner might present in an evidentiary hearing, as discussed below, the undersigned concludes that Petitioner is not entitled to an evidentiary hearing.

In sum, the Court discerns no "new" evidence that Petitioner has presented (or is entitled to present) in this Court that was not presented to, and considered by, the Michigan Court of Appeals. Thus, the undersigned respectfully recommends that the deferential standard of review articulated by AEDPA governs Petitioner's remaining ineffective assistance of counsel claim.

## II. Evidentiary Hearing

As noted above, the undersigned has been directed to "determine whether an evidentiary hearing is warranted" in this matter. A prisoner seeking a writ of habeas corpus must satisfy a rather strict standard before he is entitled to an evidentiary hearing. Pursuant to federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. . .[and Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1). Furthermore, if Petitioner "failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -

> (A) the claim relies on -
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

28 U.S.C. § 2254(e)(2).

As the Supreme Court has held, a petitioner "fail[s] to develop the factual basis of a claim in State court proceedings" only if he exhibits "a lack of diligence, or some greater fault," attributable to himself or his attorney. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Thus, "the question is not whether the prisoner has succeeded in developing the record, but whether he has been diligent in his attempts to do so." *Brown v. McKee*, 231 Fed. Appx. 469, 476 (6th Cir., Aug. 10, 2007) (citing *Williams*, 529 U.S. at 432). Petitioner unsuccessfully requested a *Ginther* hearing in the state court. The Court finds, therefore, that Petitioner diligently attempted to develop in the state courts the factual basis for the claim in question. *See Williams*, 529 U.S. at 437; *Brown*, 231 Fed. Appx. at 476. Thus, Petitioner need not satisfy the other requirements of § 2254(e)(2) identified above. *See Williams*, 529 U.S. at 437.

In such a circumstance, a habeas petitioner is "generally entitled to an evidentiary hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts

10

did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610-11 (6th Cir. 2002). The Court finds that Petitioner is not entitled to an evidentiary hearing because he has not alleged sufficient grounds for release and, moreover, has failed to demonstrate that relevant facts are in dispute.

Petitioner asserts that his trial attorney was ineffective for failing "to call alibi witness Tamichia Latham to testify." The Court notes, however, that Petitioner has presented no evidence that Latham would have offered at trial (or would offer at an evidentiary hearing) testimony providing him with an alibi or otherwise advancing his cause.

In support of this particular claim, Petitioner presents only an affidavit executed by Latham. As the Court previously recognized, however, this affidavit fails to provide Petitioner with an alibi or otherwise advance his cause. In her affidavit, Latham merely asserts, "I was a witness, Tony was home with me." (Dkt. #1, App. C). Latham has not asserted that Petitioner was with her on January 27, 2004, or even asserted that Petitioner was with her "when the crime was committed." Latham's vague assertion that "Tony was home with me" simply does not constitute an alibi. The shortcomings of this particular affidavit were discussed in the July 13, 2009 Report and Recommendation. The Court notes that Petitioner has since failed to supplement the record with any additional evidence.

Petitioner asserts that his attorney interviewed Latham, but nonetheless decided not to question her at trial. While Petitioner acknowledges that his attorney apparently made a strategic decision not to question Latham at trial, he has presented no evidence to overcome the presumption that this decision constituted sound trial strategy. Accordingly, the undersigned concludes that Petitioner is not entitled to an evidentiary hearing.

The undersigned further concludes that even if Petitioner's remaining claim is governed by the more favorable pre-AEDPA standard of review, Petitioner is likewise not entitled to an evidentiary hearing because, as discussed immediately above, he has failed to establish that the facts underlying his habeas claim are "in dispute." *See, e.g., Coleman v. Mitchell*, 268 F.3d 417, 432-34 (6th Cir. 2001).

**III.     Ineffective Assistance of Counsel**

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

The district court previously concluded that it "agrees with the R & R that the state court's determination [to reject this particular claim] was not in error under the deferential AEDPA standard of review." (Dkt. #48 at 6-7). Thus, to the extent that the AEDPA standard of review governs Petitioner's claim, the undersigned recommends that this claim be denied for the reasons previously articulated in the undersigned's July 13, 2009 Report and Recommendation and the district court's March 3, 2010 Opinion and Order. (Dkt. #43, 48). To the extent that Petitioner's claim is governed by the pre-AEDPA standard of review, whereby the Court reviews questions of law de novo and questions of fact for clear error, the undersigned reaches the same conclusion.

Even if the Court assumes that counsel was ineffective for failing to question Latham at trial, Petitioner has failed to demonstrate that he was prejudiced as a result. Petitioner has presented no evidence that Latham would have offered testimony providing him with an alibi or otherwise advancing his cause. As discussed above, the affidavit executed by Tamichia Latham does not provide Petitioner with an alibi. Thus, Petitioner has failed to demonstrate that he was prejudiced by his attorney's failure to question Latham at trail. Moreover, while Petitioner concedes that his attorney apparently made a strategic decision not to question Latham at trial, he has failed to rebut the presumption that counsel's decision constitutes "sound trial strategy." Accordingly, the undersigned recommends that this claim, even evaluated pursuant to the pre-AEDPA standard of review, is without merit.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not entitled to an evidentiary hearing. The undersigned further concludes that Petitioner's remaining ineffective assistance of counsel claim is without merit. Accordingly, the undersigned recommends that Miller's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 2, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge